UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

DARLENE COOK and SHAQUEENA COOK,

                              Plaintiffs,

                -against-

CITY OF NEW YORK, P.O. ARTURO GOMEZ,
Tax No. 954876, P.O. EDWARD LIESENGANG,
Tax No. 938843, and JOHN/JANE DOE
OFFICERS 1-10,

                              Defendants.

-------------------------------------------------------------- x

**FIRST AMENDED
COMPLAINT**

Jury Trial Demanded

15cv6559 (ILG) (CLP)

## NATURE OF THE ACTION

1.      This is an action to recover money damages arising out of the violation

of Plaintiff Darlene Cook's and Plaintiff Shaqueena Cook's ("Plaintiffs") rights under

the Fourth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the

Fourth and Fourteenth Amendments to the Constitution of the United States.

3.      This Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

4.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

The incident in question took place in this District in Kings County.

## JURY DEMAND

5.      Plaintiff demands a trial by jury in this action pursuant to Federal Rule of
Civil Procedure ("FRCP") 38.

## PARTIES

6.      At the time of the incident in question, which took place in Kings
County, New York, Plaintiff Darlene Cook resided in Kings County in the State of
New York.

7.      At the time of the incident in question, Plaintiff Shaqueena Cook resided
in Bronx County, New York, but Shaqueena Cook's arrest, which is the subject of the
incident in question, took place in Kings County, New York.

8.      Defendant City of New York was and is a municipal corporation duly
organized and existing under and by virtue of the laws of the State of New York.

9.      Defendant City of New York maintains the New York City Police
Department (hereinafter "NYPD"), a duly authorized public authority and/or police
department, authorized to perform all functions of a police department as per the
applicable sections of the aforementioned municipal corporation, the City of New
York.

10. Defendant NYPD Officer Arturo Gomez, NYPD Officer Edward Liesengang, and NYPD John/Jane Doe Officers 1-10 ("Doe Defendants"), at all times relevant herein, were duly sworn officers, employees and agents of the NYPD and were acting under the supervision of said department and according to their official duties. Officer Defendants are sued in their individual capacities.

11. That at all times hereinafter mentioned Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

12. Each and all of the acts of the Defendants were done by said Defendants while acting within the scope of their employment by Defendant City of New York.

## STATEMENT OF FACTS

13. Plaintiff Darlene Cook is Plaintiff Shaqueena Cook's maternal aunt. Darlene Cook lived in Brooklyn at the time of the incident at 9720 Kings Highway Apt. SLT, which is also where the incident took place. Shaqueena Cook lived in the Bronx at the time and what visiting her aunt when the incident occurred.

14. Shaqueena Cook is the mother of C.C., who at the time of this incident was approximately one year old and in Shaqueena Cook's custody.

3

15.     Shaqueena Cook's family had an ACS caseworker named Ms. Wright.

16.     It was in or around mid-February 2014, as best she can recollect, that Shaqueena Cook spoke to ACS Officer Wright for the last time prior to the events leading up to this incident.

17.     At the time of that last conversation, ACS Officer Wright knew that Shaqueena Cook was pregnant with M.C.

18.     ACS Officer Wright and Shaqueena Cook had not discussed C.C. and/or M.C. being removed from Shaqueena Cook's care after M.C.'s birth.

19.     On or about March 8, 2014, Shaqueena Cook gave birth to M.C. at Mount Sinai Hospital.

20.     Mount Sinai Hospital has a dedicated social worker for new mothers and this social worker communicates with ACS regarding new mothers working with that agency.   Shaqueena Cook regularly spoke to this social worker who in turn, on information and belief, reported Shaqueena Cook's and M.C.'s progress to ACS Officer Wright.

21.     Shaqueena Cook did not speak to ACS Officer Wright while Shaqueena Cook was in hospital.

22.     On March 10, 2014, Shaqueena Cook and M.C. were released from Mount Sinai.

23.     Also on March 10, 2014, Cleopatra Cook—Darlene Cook's mother and

Shaqueena Cook's grandmother—died.

24.     On March 11, 2014, various members of the Cook family gathered at Darlene Cook's home at 9720 Kings Highway to discuss memorial plans for Cleopatra Cook.

25.     Shaqueena Cook, C.C. and M.C. attended the family meeting about the plans for Cleopatra Cook's memorial.

26.     At some point on March 11, 2014, ACS Officer Wright telephoned Shaqueena Cook and asked if she could visit her and bring diapers.

27.     Shaqueena Cook told ACS Officer Wright that ACS Officer Wright could find her at her aunt Darlene Cook's home at 9720 Kings Highway because her grandmother had died and the family was gathered to make memorial arrangements.

28.     At around 8:00 p.m. on March 11, 2014, Darlene Cook and Shaqueena Cook were on the sidewalk outside Darlene Cook's home with one of their young relatives.  C.C. and M.C. were both inside Darlene Cook's home with other members of the Cook family.

29.     ACS Officer Wright, another ACS worker (on information and belief, a Ms. Dawson), Defendant NYPD Officer Gomez, Defendant NYPD Officer Liesengang, and Doe NYPD Defendants arrived.

30.     Defendants split into groups.  One group went to the front door of Darlene Cook's home ("Defendant Group One"), where the other Cook family

members were inside with C.C. and M.C.  Another group spoke to Darlene Cook ("Defendant Group Two").  Another group spoke to Shaqueena Cook, ACS Officer Wright and ACS Officer Dawson ("Defendant Group Three").

31.     Darlene Cook identified herself to Defendant Group Two as the person who lived at the home.  Defendants told her to open the door.  Darlene Cook said that she would open the door if Defendants showed her a warrant.

32.     Defendants did not show Darlene Cook a warrant.  On information and belief, Defendants did not have a warrant.  Darlene Cook did not open the door and, in any event, Darlene Cook was not in a position to open the door as she was standing on the sidewalk while Defendant Group One was already standing in the home's vestibule knocking and asking the Cook family members inside to open it.

33.     ACS Officer Wright, ACS Officer Dawson and Defendant Group Three informed Shaqueena Cook that they were there to remove C.C. and M.C.  Shaqueena Cook asked ACS to explain the grounds for removal.

34.     Defendant Officer Liesengang directed Plaintiffs' arrests and Defendant Officer Gomez effected Plaintiffs' arrests such that they participated in and failed to intervene with the incident.

35.     Defendants handcuffed and arrested Darlene Cook and Shaqueena Cook simply because they had the temerity to ask that Defendants show them a warrant. Plaintiffs had done nothing to give Defendants probable cause to believe that they

had committed any criminal offense.

36.     At or about the same time Defendants were arresting Darlene Cook and Shaqueena Cook, Cook family members had opened the door for Defendant Group One.

37.     Defendant Officer Gomez and Defendant Liesengang either falsely reported to, or failed to correct a false report given to, District Attorney's Office employees that Darlene Cook committed acts constituting Obstruction of Governmental Administration ("OGA").  This was not true.

38.     Defendants committed this same misconduct in reporting to D.A.'s Office employees that Shaqueena Cook committed acts constituting OGA and resisting arrest.  This was not true.

39.     In reliance upon Defendants' false statements, the D.A.'s Office charged Darlene Cook with OGA and Shaqueena Cook with OGA and resisting arrest.

40.     Darlene Cook and Shaqueena Cook were incarcerated for roughly one day before a judge dismissed the charges against them, and Darlene Cook and Shaqueena Cook were released.

41.     Plaintiffs suffered damages as a result of Defendants' false arrest. Defendants unconstitutionally deprived Plaintiffs of their liberty and caused them emotional trauma.

42.    All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

43.    The aforesaid incident is not an isolated incident.  The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts.  As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims and complaints filed with the NYPD's Internal Affairs Bureau and the CCRB) that many NYPD officers, including the Defendants, arrest individual persons in order to meet productivity goals and arrest quotas; arrest individuals for professional advancement, overtime compensation and/or other objectives outside the ends of justice; and/or falsely arrest individuals

and engage in a practice of falsification of evidence in an attempt to justify the false arrest.

44.     The Honorable Jack B. Weinstein, United States District Judge for the Eastern District of New York, has written that

> [i]nformal inquiry by the [C]ourt and among judges of this [C]ourt, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the [NYPD] . . . [T]here is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the [C]ity approving illegal conduct of the kind now charged.

Colon v. City of N.Y., Nos. 9 Civ. 8, 9 Civ. 9, 2009 WL 4263362, at *2 (E.D.N.Y. November 25, 2009).

45.     Former Deputy Commissioner Paul J. Browne, as reported in the press on January 20, 2006, stated that NYPD commanders are permitted to set "productivity goals," permitting an inference of such a custom or policy encouraging deprivations of individuals' constitutional rights in cases such as this one.

46.     Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights.  Despite such notice, Defendant City of New York has failed to take corrective

action. This failure caused Individual Defendants in this case to violate Plaintiffs' constitutional rights.

47.    Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

48.    All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

49.    All of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

50.    The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYPD, all under the supervision of ranking officers of said department.

51.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

52.    As a result of the foregoing, Plaintiffs are entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
## 42 U.S.C. § 1983

53.    Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

54.    Defendants, by their conduct toward Plaintiffs alleged herein, violated Plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

55.    Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

56.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SECOND CLAIM
## FALSE ARREST AND FIRST AMENDMENT RETALIATION

57.    Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

58.    Defendants violated the First, Fourth and Fourteenth Amendments because they arrested Plaintiffs without cause to believe that either Plaintiff committed any criminal offense.

59.    In addition, Defendants falsely arrested Plaintiffs in large part due to Plaintiffs' protected speech.

60.    Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

61.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## THIRD CLAIM
## FAILURE TO INTERVENE

62.    Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

63.     Individual Defendants actively participated in the aforementioned unlawful conduct but also observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

64.     Accordingly, Individual Defendants who failed to intervene violated the First, Fourth and Fourteenth Amendments of the United States Constitution.

65.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

66.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## FOURTH CLAIM
## MONELL CLAIM

67.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

68.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

69.     The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Plaintiffs' rights as described herein.  As a result of the failure of the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

70.     The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

71.     The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the NYPD constituted deliberate indifference to Plaintiffs' safety, well-being and constitutional rights.

72.     The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiffs as described herein.

**PRAYER FOR RELIEF WHEREFORE**, Plaintiffs respectfully request the following relief:

A. An order entering judgment for Plaintiffs against Defendants on each of their claims for relief;

B. Awards to Plaintiffs for compensatory damages against all Defendants, jointly and severally, for their violation of the Fourth, Fifth, Sixth and Fourteenth Amendment rights of Plaintiffs, the amount to be determined at jury trial, which Plaintiffs respectfully demands pursuant to FRCP 38;

C. Awards to Plaintiffs of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to the constitutional rights and welfare of Plaintiffs, the amount to be determined at jury trial, which Plaintiffs respectfully demand pursuant to FRCP 38;

D. Awards to Plaintiffs of the costs of this action, including reasonable attorneys' fees;

E. Such further relief as this Court deems just and proper.

DATED:     June 4, 2016
                New York, New York

                                       /s

Ryan Lozar
305 Broadway, 10th Floor
New York, New York 10007
(310) 867-1562
ryanlozar@gmail.com

*Attorney for Plaintiffs*