UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

DARLENE COOK, et al.,

                     Plaintiffs,

            - against -

CITY OF NEW YORK, et al.,

                   Defendants.
---------------------------------------------------------X

**MEMORANDUM
AND ORDER**

15 CV 6559 (ILG) (CLP)

**POLLAK**, United States Magistrate Judge:

On November 16, 2015, plaintiff Darlene Cook commenced this action, pursuant to 42 U.S.C. §§ 1983 and 1988, against defendant City of New York ("City"), New York City Police Department ("NYPD") Officer Arturo Gomez, and NYPD Officers John and Jane Doe 1-3, alleging false arrest and failure to intervene, in violation of her constitutional rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution, along with a Monell claim against the City.  On June 4, 2016, plaintiff Darlene Cook amended the Complaint to add a new plaintiff, Shaqueena Cook, a new defendant, NYPD Officer Edward Liesengang, and a First Amendment retaliation claim.

By motion filed on September 16, 2016, plaintiffs seek permission to amend their Complaint for a second time to add two employees from the Administration of Children Services ("ACS"), Sasha Lawson and Cerissa Wright, as defendants and to add several additional claims. Defendants oppose the motion to amend on the grounds that the proposed claims are futile and that adding them would delay the proceedings and prejudice the defendants.

FACTUAL BACKGROUND

Plaintiffs allege that at the time the cause of action arose, plaintiff Shaqueena Cook was the mother of infant C.C., who was one-and-a-half years old and in Shaqueena Cook's custody. (Sec. Am. Compl.[1] ¶ 15).  Plaintiffs also allege that defendant Child Protective Specialist ("CPS") Cerissa Wright was Shaqueena Cook's family caseworker at the time the cause of action arose and that defendant Child Protective Specialist Supervisor ("CPSS") Sasha Dawson was defendant Wright's supervisor at the time the cause of action arose.  (Id. ¶¶ 16-17).  Plaintiffs claim that at the time of Shaqueena Cook's last conversation with Wright, both Wright and Dawson knew that Shaqueena Cook was approximately eight months pregnant with infant M.C. (Id. ¶ 19).

Plaintiffs also allege that, at the time of M.C.'s birth, Wright and Shaqueena Cook had not discussed the removal of C.C. from Shaqueena Cook's care since 2012; they also did not discuss the potential removal of C.C. and M.C. once M.C. had been born.  (Id. ¶ 20).  Plaintiffs state that on March 8, 2014, Shaqueena Cook gave birth to M.C.  (Id. ¶ 22).  Plaintiffs allege that defendant Wright did not speak to Shaqueena Cook while she was in the hospital; instead, CPS Donna Farray, who is not a defendant in the action, investigated the family when M.C. was born, pursuant to ACS protocol "Safety Alert 14."  (Id. ¶ 24).  Plaintiffs allege that CPS Farray noted in ACS records that Shaqueena Cook's case was not designated as a case requiring an "Instant Response Team," that a neglect allegation would be "unsubstantiated," that Shaqueena Cook received morphine during childbirth, and that a break from certain medications during pregnancy

---

[1]Citations to "Sec. Am. Compl." refer to plaintiffs' Proposed Second Amended Complaint, filed on September 16, 2016.

did not affect Shaqueena Cook's health.[2]  (Id. ¶¶ 25-26).  Plaintiffs claim that on March 10, 2014, Shaqeena Cook and M.C. were released from the hospital and went to Shaqueena Cook's sister's home.  (Id. ¶ 27).

 Plaintiffs also allege that later that day on March 10, 2014, defendant CPSS Dawson wrote a progress note in the ACS file, stating that plaintiff Shaqueena Cook's children, C.C. and M.C., did not seem to be in any danger of harm by being with their mother.  (Id. ¶ 29).  Plaintiffs allege that at midnight on March 10, 2014, CPS official Albert-Ann Benjamin made an unannounced visit to Shaqueena Cook to further investigate the case and remarked in ACS records that she observed M.C. to be in good condition and that M.C. and Shaqueena Cook interacted well together.  (Id. ¶ 30).

Plaintiffs allege that on March 11, 2014, plaintiff Darlene Cook, plaintiff Shaqueena Cook's aunt, invited members of the family to her apartment, located at 9720 Kings Highway, Bronx, N.Y., to discuss funeral plans for Darlene Cook's mother who had passed away on March 10, 2014.  (Id. ¶¶ 28, 31, 33).  Plaintiffs allege that Shaqueena Cook and her two children were among the family members who went to Darlene Cook's home that day.  (Id. ¶ 34).  Plaintiffs claim that at some point that day, Wright called Shaqueena Cook and asked if Wright could bring her diapers for M.C.  (Id. ¶ 35).  According to plaintiffs, Shaqueena Cook agreed but informed Wright she would be at 9720 Kings Highway for part of the day; Wright agreed to meet her and the children there.  (Id.)

─────────────────

[2]Plaintiffs do not specify which medications Shaqueena Cook was taking before her pregnancy, but allege that, with regards to Shaqueena Cook's break in taking the medications, CPS Farray's notes in the ACS files observe that "in any event Shaqueena Cook seemed well." (Id. ¶ 26).

Plaintiffs allege that at approximately 8:00 p.m. on March 11, 2014, Darlene and

Shaqueena Cook were on the sidewalk outside 9720 Kings Highway with a young relative when

CPS Wright, CPSS Dawson, NYPD Officer Gomez, NYPD Sergeant Liesengang, and at least ten

John Doe defendants arrived at 9720 Kings Highway.  (Id. ¶ 37).  Plaintiffs allege that defendants

split into three groups:  one group approached Shaqueena Cook, among them Wright and

Dawson; another group approached Darlene Cook; and a third group went directly to the home at

9720 Kings Highway and knocked on the door.  (Id. ¶ 38).

Plaintiffs allege that 9720 Kings Highway was directly accessible from the sidewalk

through two doors.  (Id. ¶ 39).  The first door was on the sidewalk and led to a small square

vestibule and another door led to the home's interior.  (Id.)  Plaintiffs allege that the sidewalk

door was wide open when defendants arrived and that the third group of defendants entered the

vestibule immediately and knocked on the door leading to the home's interior.  (Id.)  Plaintiffs

allege that they asked if defendants had a warrant or court order.  (Id. ¶ 40).  According to

plaintiffs, defendants had no warrant but the NYPD officers stated that the ACS officers had

authority to remove the children.  (Id.)  Plaintiffs allege that the NYPD officers proceeded to

handcuff and arrest plaintiffs, placing them in a police vehicle.  (Id. ¶ 41).  Plaintiffs also allege

that while they were being arrested, the occupants of 9720 Kings Highway had opened the door

to the third group of defendants and that the "ACS defendants were in the process of removing

C.C. and M.C."  (Id. ¶ 42).

Plaintiffs state that they were charged with Obstruction of Governmental Administration

("OGA") and resisting arrest and that they were incarcerated for roughly one day before they

were released.  (Id. ¶ 46).  Plaintiffs claim that a state court judge eventually dismissed the

charges against plaintiffs.  (Id. ¶ 47).  Plaintiffs also claim that they suffered emotional trauma as a result of defendants' actions.  (Id. ¶ 48).

## PROCEDURAL HISTORY

Plaintiff Darlene Cook commenced this action on November 16, 2015 against the City of New York, NYPD Officer Arturo Gomez, and John and Jane Doe police officers 1-10, alleging false arrest, failure to intervene in violation of her constitutional rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution, and a Monell claim against the City.  Defendants City and Officer Gomez filed an Answer on February 9, 2016, and thereafter, on June 4, 2016, following the exchange of some discovery, plaintiff filed an Amended Complaint, with the consent of the defendants.  The First Amended Complaint added a new plaintiff, Shaqueena Cook, and a new defendant, NYPD Officer Edward Liesengang.  (First Am. Compl.[3] ¶¶ 7, 10).  In addition to the new parties, the First Amended Complaint also added factual allegations and a First Amendment retaliation claim, which was combined with the false arrest claim.  (Id. ¶¶ 57-61).

After an unsuccessful settlement conference held before the undersigned on June 8, 2016, defendants obtained certain ACS records.  On September 16, 2016, plaintiffs filed their motion to amend the Complaint a second time, seeking to add the two ACS employees, Lawson and Wright, as defendants.  (Pls.' Mem.[4] at 1).  Plaintiffs also seek to add claims of false arrest,

---

[3]Citations to "First Am. Compl." refer to the First Amended Complaint, filed on June 4, 2016.

[4]Citations to "Pls.' Mem." refer to the Memorandum of Law in Support of Plaintiffs' Motion to Amend, filed on September 16, 2016.

unlawful search, retaliation in violation of the First Amendment, due process violations, and a failure to intervene claim against the ACS defendants.  (Sec. Am. Compl. ¶¶ 63-87).  Plaintiffs also move to add a fabrication of evidence claim and denial of a fair trial claim against both the NYPD and ACS defendants.

On September 30, 2016, defendants filed their response in opposition to the motion. Defendants oppose the motion to amend on several grounds: 1) that the fair trial claim against the NYPD and ACS defendants is futile; 2) that the false arrest, unlawful search, due process, and failure to intervene claims against the ACS defendants are futile and fail to state claims upon which relief can be granted; and 3) that amending the Complaint again would delay the proceedings and prejudice the defendants.  (Defs.' Mem.[5] at 3).  Defendants do not oppose the motion to amend to add the First Amendment retaliation claim against the ACS defendants.  On October 14, 2016, oral argument was held on the motion to amend.

On March 2, 2017, defendants filed a letter, attaching Family Court records dated March 12, 2014 and arguing that these records proved that the New York State Family Court made all the requisite findings to place M.C. in the custody of ACS[6] and accordingly, that plaintiffs' due process and unlawful entry claim are futile.  (Defs.' 3/2/17 Ltr. at 2, Ex. A).  On March 6, 2017, plaintiffs filed a letter in response, arguing that the March 12, 2014 Family Court records do not render plaintiffs' due process and unlawful entry claims futile because the proceedings occurred

---

[5]Citations to "Defs.' Mem." refer to the Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Amend, dated September 30, 2016.

[6]The Family Court records provided to the Court do not contain any information regarding whether ACS had authorization to remove C.C. from plaintiff's custody, and defendants have not explained the basis for C.C.'s removal on March 11, 2014.

6

after plaintiffs were allegedly arrested on March 11, 2014.  As a result of the arrest, plaintiff Shaqueena Cook was not present for the hearing to determine whether emergency circumstances existed for the removal of M.C. and C.C.  (Pls.' 3/6/17 Ltr. at 1).

For the reasons set forth below, the Court respectfully recommends that the motion to amend be granted.

<u>DISCUSSION</u>

I.  <u>Motion to Amend - Standards</u>

Rule 15 of the Federal Rules of Civil Procedure provides that when a party seeks to amend their pleading beyond the time period allowed for an amendment as a matter of course, that party "may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Thus, absent the opposing party's consent, the Rule requires parties seeking to amend their pleadings to obtain the leave of the Court before doing so.  <u>Id.</u> Rule 15 expresses a strong presumption in favor of allowing amendment, stating that "[t]he court should freely give leave when justice so requires."  <u>Id.</u>

While courts have broad discretion in deciding whether to grant motions to amend, the Second Circuit has cautioned that an amendment should only be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 200-01 (2d Cir. 2007); <u>accord</u> <u>Burch v. Pioneer Credit Recovery, Inc.</u>, 551 F.3d 122, 126 (2d Cir. 2008).  The party opposing amendment bears the burden of demonstrating good reason for denial.  <u>Speedfit, LLC v. Woodway USA, Inc.</u>, No. 13 CV 1276, 2015 WL 6143697, at *3 (E.D.N.Y. Oct. 19, 2015).

II.  Analysis

    A.  Futility of the Amendments

    Defendants oppose plaintiffs' motion to amend on grounds of futility, contending that all of plaintiffs' new claims against the ACS defendants, with the apparent exception of the proposed First Amendment retaliation claim, would fail as a matter of law.  (Defs.' Mem. at 3).

    "An amendment is futile when it cannot 'withstand a motion to dismiss pursuant to Rule 12(b)(6).'"  MacEntee v. IBM, 783 F. Supp. 2d 434, 446 (S.D.N.Y. 2011), aff'd, 471 F. App'x 49 (2d Cir. 2012), cert. denied, 133 S. Ct. 985 (2013) (quoting Oneida Indian Nation of New York v. City of Sherrill, N.Y., 337 F.3d 139, 168 (2d Cir. 2003), rev'd on other grounds, 544 U.S. 197 (2005)).  Thus, when deciding whether an amendment to a complaint would be futile, the court uses "the same standards as those governing the adequacy of a filed pleading."  Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).  Accordingly, the Court must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader."  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993); see also Gorman v. Consolidated Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007), cert. denied, 553 U.S. 1093 (2008).  In addition, the court must give plaintiffs' claims "a liberal construction."  Johnson v. New York City Transit Auth., 639 F. Supp. 887, 891-92 (E.D.N.Y. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)), aff'd in part and vacated in part on other grounds, 823 F.2d 31 (2d Cir. 1987).  However, the court is not required to accept the truth of legal conclusions couched as factual allegations.  See Papasan v. Allain, 478 U.S. 265, 286 (1986).

    In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court clarified the pleading standards under which courts are

to evaluate a motion to dismiss, "arguably shift[ing] pleading standards from 'simple notice

pleading' to a 'more heightened form of pleading.'" Barbosa v. Continuum Health Partners, Inc.,

716  F. Supp. 2d 210, 214 (S.D.N.Y. 2010) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544;

Ashcroft v. Iqbal, 556 U.S. 662).  Now, when deciding a Rule 12(b)(6) motion to dismiss, the

court should consider whether the complaint "contain[s] sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. at 678

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell

Atl. Corp. v. Twombly, 550 U.S. at 556); see also Hayden v. Paterson, 594 F.3d 150, 160-61 (2d

Cir. 2010).

       Under this heightened pleading standard, labels, conclusions, and mere recitation of the

elements of a cause of action will not suffice.  Ashcroft v. Iqbal, 556 U.S. at 678; see also Bell

Atl. Corp. v. Twombly, 550 U.S. at 555.  Instead, a plaintiff must provide enough factual support

that, if true, would "raise a right to relief above the speculative level."  Bell Atl. Corp. v.

Twombly, 550 U.S. at 555.  However, "plausibility" does not rise to the level of "probability" but

instead requires "'more than a sheer possibility that a defendant has acted unlawfully.'"  Barbosa

v. Continuum Health Partners, Inc., 716  F. Supp. 2d at 215 (quoting Ashcroft v. Iqbal, 556 U.S.

at 678).

       Thus, in deciding a motion to amend that is challenged on grounds of futility, the Court

considers whether the newly added claims contain sufficient factual allegations to state a

plausible claim for relief.  "The issue is not whether a plaintiff will ultimately prevail but whether

the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S.

232, 236 (1974); see also Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995),

cert. denied, 519 U.S. 808 (1996).  Ultimately, when the well-pleaded facts allow no more than

an inference of a "mere possibility of misconduct" and plaintiff has only alleged, rather than

shown, an entitlement to relief, the federal pleading standard has not been satisfied.  Ashcroft v.

Iqbal, 556 U.S. at 679.


    1)  False Arrest Claim against ACS Defendants

Plaintiffs first seek to add claims of false arrest against the two ACS workers, alleging

that "Defendants fabricated evidence likely to influence a jury decision, forwarded that

information to prosecutors, and Plaintiffs suffered a deprivation of liberty as a result."  (Sec. Am.

Compl. ¶ 75).

For purposes of evaluating a Section 1983 action based on claims of false arrest and false

imprisonment, courts in this circuit look to the elements of a false arrest claim under state law.[7]

Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995); Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir.

1992); Labensky v. County of Nassau, 6 F. Supp. 2d 161, 176 (E.D.N.Y. 1998) (stating that

"[c]laims brought under 42 U.S.C. § 1983 are guided by the tort law of the forum state"), aff'd,

173 F.3d 845 (2d Cir. 1999); Dukes v. City of N.Y., 879 F. Supp. 335, 340 (S.D.N.Y. 1995).

In order to establish a claim for false arrest under New York State law, the plaintiff must

---

[7]The torts of false arrest and false imprisonment are largely synonymous.  59 N.Y. Jur. 2d, False Imprisonment § 1 (1987).  "Every false arrest is itself a false imprisonment, with the imprisonment commencing at the time of the arrest."  Blachfield v. State, 104 Misc. 2d 21, 24, 427 N.Y.S.2d 682, 685 (1980).

prove the following four elements:  (1) that the defendant intended to confine the plaintiff; (2) that the plaintiff was conscious of the confinement; (3) that the plaintiff did not consent to the confinement; and (4) that the confinement was not otherwise privileged.  Singer v. Fulton Cnty. Sheriff, 63 F.3d at 118; Wright v. Naranjo, No. 94 CV 2461, 1996 WL 449276, at *3 (E.D.N.Y. Aug. 1, 1996); Reid v. City of N.Y., 736 F. Supp. 21, 24 (E.D.N.Y. 1990); Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310, 314, cert. denied, 423 U.S. 929 (1975); see also Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (stating that in order to "establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification'") (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).

There appears to be no dispute that plaintiffs have satisfied the pleading requirements with respect to the second and third elements of the false arrest claim.  In challenging the basis for the arrest and alleging that they suffered emotional trauma as a result of  defendants' actions (id. ¶ 48), plaintiffs have sufficiently alleged that they were conscious of and did not consent to the confinement.  (Id. ¶¶ 41, 43, 44).

As for the remaining elements – that the defendants intended to confine plaintiffs and that the confinement was not otherwise privileged[8] – the first element of the false arrest claim, intent to confine, may be shown by evidence that the defendant either confined or intended to confine a plaintiff or "affirmatively procured or instigated the plaintiff's arrest."  Lozada v. Weilminster, 92 F. Supp. 3d 76, 90 (E.D.N.Y. 2015) (citing King v. Crossland Sav. Bank, 111 F.3d 251, 256

---

[8]Apart from arguing that there was probable cause for the arrest, defendants have not taken the position that the arrest was otherwise privileged.

(2d Cir. 1997)).  Under New York law, "[o]ne who wrongfully accuses another of criminal conduct and induces or procures that person's arrest may be liable for false arrest."  Croft v. Greenhope Servs. for Women, Inc., No. 13 CV 2996, 2013 WL 6642677, at *5 (S.D.N.Y. Dec. 17, 2013).  However, "to impose liability for false imprisonment on 'one who causes or directs an arrest or imprisonment,' the plaintiff must show that the defendant 'affirmatively induced' the arrest by 'taking an active part in the arrest and procuring it to be made . . . to the point where the officer is not acting of his own volition.'"  Vlach v. Staiano, No. 12 CV 1758, 2014 WL 2927161, at *3 (N.D.N.Y. June 27, 2014), aff'd, 604 F. App'x 77 (2d Cir. 2015) (citing Curley v. AMR Corp., 153 F.3d 5, 13–14 (2d Cir. 1998)).

Defendants concede that under New York law, a defendant may be liable for an arrest by the police if he "affirmatively procured or instigated the plaintiff's arrest."  (Defs.' Mem. at 6 (citing Druschke v. Banana Republic, Inc., 359 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2005)).  However, defendants claim that the ACS defendants had no involvement in plaintiffs' arrests and that their act of reporting to the NYPD is insufficient on its own to establish that they affirmatively procured plaintiffs' arrest which, defendants argue, was "based on NYPD Defendants' firsthand observations."  (Id.)

Plaintiffs dispute the assertion that the ACS defendants did not cause the NYPD to enter into plaintiff Darlene Cook's residence, arguing that, "[i]t was ACS Defendants' false statement about exigent removal circumstances which prompted NYPD Defendants to violate her Fourth Amendment privacy rights."  (Pls.' Reply[9] at 4).  Specifically, plaintiffs allege that the ACS

---

[9] Citations to "Pls.' Reply" refer to the Reply in Support of Plaintiffs' Motion to Amend, filed on October 9, 2016.

defendants made "false statements and omissions to the NYPD about the existence of those emergency removal conditions." (Sec. Am. Compl. ¶ 65). In addition, plaintiffs allege in the Second Amended Complaint that the defendants' mistaken belief as to the existence of emergency removal circumstances contributed to the NYPD Officers' probable cause determination, despite the arguable unreasonableness of that belief.

In support of their argument that plaintiffs should be precluded from adding the false arrest and due process claims, defendants recently provided a copy of the March 12, 2014 Order issued by the New York State Family Court. (Defs.' 3/2/17 Ltr., Ex. A). In the Order directing temporary removal of M.C., the New York State Family Court found that M.C.'s interests required protection, that continuation of residence by M.C. in his current home would be contrary to his welfare, and that reasonable efforts were made prior to the hearing to prevent the need for removal of the child from his home. (Id.)

However, plaintiffs argue that the March 12, 2014 Order does not render their false arrest and due process claims futile because the emergency removal in question and the arrest of the plaintiffs allegedly occurred on March 11, 2014, a day before the issuance of the Order directing temporary removal. (Pls.' 3/6/17 Ltr. at 1). Thus, the Family Court's decision to direct removal was not made until after the children had actually been taken by ACS. Moreover, because Shaqueena Cook was in custody and could not be present for the hearing, her right to procedural due process of law was violated. Thus, plaintiffs argue that the Family Court Order issued a day after the arrests does not prove conclusively that the ACS officers did not induce or procure plaintiffs' arrests by providing false information to the police officers that led them to improperly remove the children from Shaqueena Cook's custody. (Id.)

Upon review of the March 12, 2014 Family Court Order, the Court finds that the Order does not render plaintiffs' false arrest or due process claims futile because, accepting plaintiff's factual allegations as true for the purposes of the motion to amend, the Order was entered <u>after</u> the plaintiffs were allegedly arrested.  Given plaintiffs' allegations that the ACS records prior to March 11, 2014 contain nothing that would suggest that M.C.'s welfare was in jeopardy, plaintiffs have raised questions as to what the ACS defendants told the NYPD officers was the reason for the emergency removal, whether they fabricated a rationale, as plaintiffs allege, whether they followed the proper procedures in removing M.C. prior to the hearing and whether the ACS defendants instigated plaintiffs' arrest through an improper removal process.

Plaintiffs also contend that the "NYPD Officer Defendants handcuffed and arrested Plaintiffs without any reasonable belief that they had committed a criminal offense, even assuming ACS Defendants had reasonably believed and appropriately represented that there were emergency removal circumstances."  (<u>Id.</u> ¶ 41).  Thus, according to plaintiffs, even if the ACS defendants had reasonably concluded that emergency removal circumstances existed, this alone would not warrant a "reasonable belief" on the part of the arresting officers that there was probable cause to believe that plaintiffs had committed a criminal offense.

Moreover, plaintiffs provide another possible factor that they allege motivated the arrests. Plaintiffs allege that "Defendants arrested Plaintiffs in order to halt Plaintiffs' questioning about a warrant or court order for the search and seizure."  (<u>Id.</u>)  Plaintiffs allege that although they were charged with Obstructing Governmental Administration ("OGA"), the arrests were made because they were challenging the ACS defendants' and the NYPD officers' authority to proceed in the absence of either a warrant or a court order.  (<u>Id.</u> ¶¶ 40-41).  Defendants respond by

14

arguing that the NYPD officers acted of their own volition in response to the situation; specifically, defendants allege that immediately before the arrests, Darlene Cook allegedly tried to close the door on the ACS employees and Shaqueena Cook allegedly shoved Officer Gomez. (Defs.' Mem. at 6-7).  See Vlach v. Staiano, 2014 WL 2927161, at *3.

However, at this point in the litigation, when none of the witnesses have been deposed about what occurred at the time of the actual arrest, it is premature to conclude that the ACS officers, who were allegedly in the group with plaintiffs at the time of the arrest, played no role in inducing the officers' conduct.  In fact, plaintiffs' allegation that the NYPD and ACS officers arrived with "at least ten Doe defendants" (Sec. Am. Compl. ¶ 37), lends support to their claim that the ACS officers' representations to the NYPD officers contributed to the officers' determination that a significant law enforcement presence would be necessary to carry out the emergency removal.

Based on the foregoing, and accepting as true the plaintiffs' factual allegations, the Court finds that the Second Amended Complaint sets forth a plausible claim that the ACS defendants, through false information relating to the emergency need to remove the children, instigated the NYPD officers to enter Darlene Cook's home without a warrant and without probable cause. The Second Amended Complaint also sets forth facts from which a reasonable inference can be drawn that while the ACS workers may not have directly urged the officers to arrest the plaintiffs at that time, the allegations suggest that the ACS officers caused the NYPD officers to arrest plaintiffs in order to halt plaintiffs' challenges to the removal of the children in the absence of a warrant or court order.

Accordingly, the Court grants the motion to amend the Complaint to add a false arrest

15

claim against the ACS defendants, without prejudice to defendants moving to dismiss once additional discovery is taken to determine whether the evidence supports defendants' claim that the NYPD officers had an independent basis for probable cause to arrest plaintiffs.

### 2) Unlawful Search Claim against ACS Defendants

Plaintiff Darlene Cook, in her individual capacity, seeks to bring an unlawful search claim against the ACS defendants on the grounds that she had a reasonable expectation of privacy in her home, "which privacy ACS Defendants unreasonably importuned NYPD Officer Defendants to violate by falsely stating to them that they had an emergency justification for entering the premises without Plaintiff Darlene Cook's consent to seize C.C. and M.C." (Sec. Am. Compl. ¶ 85). Defendants argue that plaintiffs' proposed Second Amended Complaint does not allege facts establishing the personal involvement of the ACS defendants in that plaintiffs do not allege that the ACS defendants actually entered Darlene Cook's premises. (Defs.' Mem. at 7). Plaintiffs argue that a defendant can be liable for the unlawful search of an individual's home when the defendant causes an investigative authority to believe there is probable cause to enter the home. (Pls.' Mem. at 12).

Courts in this circuit have allowed plaintiffs to bring unlawful search claims against defendants on the grounds that defendants provided false statements or omitted material information to support a probable cause determination for a search warrant, even if those defendants themselves did not enter the home that was searched. See Calderon v. City of N.Y., 138 F. Supp. 3d 593, 601 (S.D.N.Y. 2015), on reconsideration in part, No. 14 CV. 1082, 2015 WL 6143711 (S.D.N.Y. Oct. 19, 2015) (on other grounds) (holding that plaintiff's allegations

were sufficient to support the claim that a detective made allegedly false statements in an affidavit in support of the search warrant where "unidentified NYPD officers" entered plaintiff's home and executed the search warrant).  A plaintiff can demonstrate that her right not to be searched without a warrant "was violated where the officer submitting the probable cause affidavit 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit' or omitted material information, and that such false or omitted information was 'necessary to the finding of probable cause.'" McColley v. County of Rensselaer, 740 F.3d 817, 823 (2d Cir. 2014) (citing Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993)).

When a Fourth Amendment violation has been alleged against an ACS defendant for making a false representation to support a search warrant, courts in this district have engaged in a fact-intensive inquiry to determine whether the plaintiff's complaint has plausibly alleged that the defendant's affidavit contained false representations that contributed to the probable cause determination for a search.  Stepanian v. City of N.Y., No. 15 CV 1943, 2015 WL 5350801, at *4 (E.D.N.Y. Sept. 14, 2015) (holding that plaintiff's complaint failed to plausibly state that the ACS defendant violated plaintiff's Fourth Amendment rights after the court reviewed surveillance videos supporting the ACS defendant's statements in his affidavit); see also Southerland v. Woo, 44 F. Supp. 3d 264 (E.D.N.Y. 2014) (holding that the "[c]aseworker for city administration for children's services (ACS) was not reasonable in his belief that emergency circumstances justifying removal of children from their father's apartment without court order were present, and thus [the] caseworker was not entitled to qualified immunity from liability in children's § 1983 action alleging that their seizure violated their Fourth Amendment rights"),

aff'd, No. 14 CV 3780, 2016 WL 5375779 (2d Cir. Sept. 26, 2016).

Here, plaintiffs rely on the holding in McColley to support their argument that the ACS defendants induced the NYPD defendants to enter Darlene Cook's home and conduct a search even in the absence of probable cause.  (Pls.' Mem. at 12).  They allege that the ACS records that provided emergency justification for the search provide proof of the allegedly false statements made by the ACS defendants, although plaintiffs do not provide specific citations to evidence in the ACS files indicating the nature and content of these statements.  (Id.)  Indeed, during oral argument, plaintiffs indicated that they still need additional records from ACS[10] to provide further proof of these false statements.

Accepting plaintiffs' allegations as true for the purposes of this motion, the ACS defendants could be held liable for violating plaintiff Darlene Cook's Fourth Amendment rights if they are found to have made false statements in support of the existence of probable cause to enter and conduct a search of Darlene Cook's home.  Given that the unlawful search claim involves disputed issues of fact concerning the truthfulness of the statements made by the ACS defendants which require additional discovery, the Court finds that these are factual disputes that cannot be resolved at this stage in the litigation.  Accordingly, the Court grants plaintiffs' motion to amend to add an unlawful search claim against the ACS defendants.

---

[10]Although plaintiffs have provided some ACS records as exhibits to their motion to amend – namely, a series of progress notes relating to certain visits made by ACS to plaintiff Shaqueena Cook at the hospital and at her home after she delivered M.C., and notes describing the removal of the children (Pl.'s Mem., Ex. D) – plaintiffs' counsel represented during oral argument that he had requested the production of additional ACS and Family Court records relating to the alleged emergency circumstances for removal.

3)  <u>Procedural Due Process Claim against ACS Defendants</u>

Plaintiff Shaqueena Cook seeks to add a due process claim against the ACS defendants in

the Second Amended Complaint, alleging that the ACS defendants "violated Plaintiff Shaqueena

Cook's right to family integrity, i.e., the right of a family to stay together without the interference

of the power of the state."  (Sec. Am. Compl. ¶ 79).  Defendants argue that although parents have

due process rights to a court proceeding before children are removed from their care without their

consent, the existence of emergency circumstances provides an exception to these procedural

requirements.  (Defs.' Mem. at 12).  Plaintiffs contend that although emergency circumstances do

provide an exception to the procedural due process requirement of a court hearing before

removal, there was no "objectively reasonable basis" in this case to believe that emergency

circumstances existed.  (Pls.' Mem. at 11).

To state a claim for a violation of procedural due process, a plaintiff must allege that a

defendant deprived her of a protected liberty interest without following constitutionally mandated

procedures.  <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569-70 (1972).  Parents have a

constitutionally protected interest in maintaining custody of their children.  <u>Stanley v. Illinois</u>,

405 U.S. 645, 651–52 (1972).  A parent may not be constitutionally deprived of the custody of

his or her child without a hearing "at a meaningful time and in a meaningful manner."

<u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965).  However, "'in emergency circumstances, a

child may be taken into custody by a responsible State official without court authorization or

parental consent.'"  <u>Southerland v. City of N.Y.</u>, 680 F.3d 127, 149 (2d Cir. 2012) (quoting

<u>Tenenbaum v. Williams</u>, 193 F.3d 581, 596-97 (2d Cir. 1999)).  To show that emergency

circumstances existed, "'[t]he government must offer 'objectively reasonable' evidence that harm

19

[was] imminent.'"  Id.  In determining whether emergency circumstances existed, "the facts must

not be viewed in hindsight.  Rather, the question is whether the officer had a reasonable basis for

concluding at the time of removal that it was necessary based on emergency circumstances."

P.A. v. City of N.Y., 44 F. Supp. 3d 287, 300–01 (E.D.N.Y. 2014).

Here, plaintiff Shaqueena Cook states a claim for deprivation of her procedural due

process rights by alleging that no emergency circumstances existed that excused the use of

constitutionally mandated procedures before her children were removed from her.  Plaintiffs

suggest that the ACS defendants did not have either an objective or a subjective belief that

emergency circumstances existed to remove the children.  (Sec. Am. Compl. ¶ 6).  Specifically,

plaintiffs allege in the Second Amended Complaint that ACS defendant Dawson did not have a

subjective belief that emergency circumstances existed because "[l]ater in the day on March 10,

2014, Defendant CPSS Dawson wrote a progress note in the Shaqueena Cook file stating that

C.C. and M.C. did not seem to be in danger of any harm by being with their mother."  (Id.)

Plaintiffs also allege several factual circumstances that question the objective reasonableness of

the emergency removal:  1) that plaintiff Shaqueena Cook was among her family members at

plaintiff Darlene Cook's residence at the time of the removal (id. ¶ 34); 2) that CPS Farray's

notes indicated that "Shaqueena Cook's break from certain medications during pregnancy did not

affect her health (and that in any event Shaqueena Cook seemed well)" (id. ¶ 26); and 3) that

Shaqueena Cook's case was not designated as a case that required an "Instant Response Team."

(Id. ¶ 24).

Defendants argue that plaintiff's motion to amend to add the procedural due process

claim against the ACS defendants should be denied on the grounds that plaintiffs falsely

20

represented the content of ACS records.  Defendants contend that "[p]laintiffs' allegations in support of this claim, taken as true, may have established a procedural due process claim; however, these factual allegations mischaracterize and misstate the record."  (Defs.' Mem. at 8). Defendants allege that the statements plaintiffs quote from the ACS records were taken out of context and that the ACS records, in fact, clearly show that there were certain conditions that indicated that an emergency removal of the children was necessary, specifically, that Shaqueena Cook was unstable and did not have any provisions for the two children.  (Id. at 9 (citing Pl.'s Mem., Ex. D)).

As one of these alleged false representations, defendants refer to plaintiffs' quote in the Second Amended Complaint that CPS Dawson wrote in the ACS records that "[a]t this time, the children do not seem to be [in] imminent danger of harm" and argue that this statement was not CPSS Dawson's own, but that she added information from CPS Donna Farray's observations into her report.  (Def.'s Mem. at 9 (citing Sec. Am. Compl. ¶ 29)).  In the ACS records attached as exhibits to plaintiffs' motion to amend, the progress note entered on March 10, 2014 names "Sasha Dawson" as its author and includes the cited quotation, but does not attribute the statement to a specific source.  (Pl.'s Mem., Ex. D at 173).  Thus, it is unclear from the record alone whether CPSS Dawson or CPS Farray made the observation that on March 10, 2014, the children did not appear to be in imminent danger of harm.  Moreover, regardless of who made the cited observation, plaintiffs have clearly raised factual allegations that immediately prior to the removal of C.C. and M.C., the ACS records indicated that the children may not have been in immediate harm.  Defendants also argue that although plaintiffs "cherry-pick the most favorable observations" by CPS Albert-Ann Benjamin that the children appeared to be in good health,

plaintiff Shaqueena Cook also expressed that she did not have anything for the newborn at the time of CPS Benjamin's visit.  (Def.'s Mem. at 9 (citing Sec. Am. Compl. ¶ 30)).  The progress note made by CPS Benjamin, entered on March 13, 2014, states that, during his visit on March 10, 2014, "CPS was able to assess that both children were free of marks and bruises [and] appeared to be in good health."  (Pl.'s Mem., Ex. D at 172).  While the progress note does indicate that Shaqueena Cook might not have had enough clothes and daily essentials for the newborn, it also suggests that aside from learning that Shaqueena Cook did not have sufficient supplies, CPS Benjamin did not have any other reason to believe that the children were in danger during his visit on March 10, 2014.  Thus, plaintiffs' factual allegations and the ACS records they provide raise factual issues surrounding the existence of emergency circumstances for the removal of the children.

Even so, to the extent that defendants oppose the amendment on the grounds that the ACS records contain evidence contrary to plaintiffs' reading of the record or that plaintiffs have "mischaracterized" the records in the Second Amended Complaint, defendants misapprehend the degree to which the Court may undertake a fact-intensive inquiry of the kind that would be required to evaluate defendants' arguments; such an inquiry is not appropriate when deciding whether a motion to amend a complaint should be granted or denied.  Under the prevailing standard for deciding motions to amend and dismiss, courts must accept the factual allegations of the complaint as true and draw all inferences in favor of the pleader.  Mills v. Polar Molecular Corp., 12 F.3d at 1174.  Thus, even if defendants' allegations are true that plaintiffs have mischaracterized the contents of the ACS records that provided justification for the emergency removal of the children, the Court must accept the plaintiffs' factual assertions regarding the

records for the purpose of determining the plausibility of a procedural due process claim.

The issue of whether objectively reasonable circumstances actually existed to justify emergency removal raises an issue of fact that cannot be determined at this stage in the proceedings.  See Bruker v. City of N.Y., 92 F. Supp. 2d 257, 267 (S.D.N.Y. 2000) (holding that the question of whether a mother was entitled to a pre-deprivation hearing before her daughter was removed from her custody or whether an objectively reasonable basis existed for believing that the mother's custody was a threat to her daughter's health and safety raised an issue of fact that could not be determined on a motion to dismiss for failure to state a claim); Johnson v. City of N.Y., No. 99 CV 0048, 2003 WL 1826122, at *9 (S.D.N.Y. Apr. 8, 2003) (holding that "[n]one of the parties is entitled to summary judgment on this issue.  There is a material question of fact as to whether ACS representatives had an objectively reasonable basis for concluding that the children were in imminent danger of harm at the time of the children's removal from Rebecca Johnson's foster home").

As discussed supra on pages 12-13, the March 12, 2014 Order defendants presented as evidence to preclude plaintiffs' due process claim does not clarify the legal issues surrounding the removal of M.C. and C.C. from plaintiff Shaqueena Cook's custody.  Although the Order directed temporary removal of M.C., it was entered the day after both children were removed from Shaqueena Cook's custody and after plaintiffs were arrested.  (Pls.' 3/6/17 Ltr. at 1).  Moreover, the Order only appears to relate to M.C.'s removal and does not explicitly authorize the removal of C.C. from Shaqueena Cook's custody.  (Id., Ex. A).  Plaintiffs argue that the Order does not answer the question of whether emergency circumstances existed that obviated the need for a court order in the first place or whether plaintiff Shaqueena Cook's arrest and

resulting absence from the hearing adversely affected her ability to present her case before the Family Court and consequently, violated her due process rights.  (Id.)  Given the existence of factual disputes surrounding the reasons for the seizure of the children and plaintiff Shaqueena Cook's absence from the hearing to temporarily remove M.C., the Court cannot make a determination, at this time, whether plaintiff's due process of law claim would be futile as a matter of law.

It is sufficient that plaintiff Shaqueena Cook alleges facts that call into question the existence of an objectively reasonable belief for emergency removal to state a procedural due process claim.  Based on the discussion above, the Court finds that plaintiffs' factual assertions adequately state a claim for relief based on the ACS defendants' alleged violation of plaintiff Shaqueena Cook's due process rights.  Thus, plaintiffs' motion to amend to add a procedural due process claim against the ACS defendants is granted.

### 4)  Failure to Intervene Claim against ACS Defendants

Plaintiffs also seek to amend the Complaint to add a failure to intervene claim against the ACS defendants,[11] alleging that the "individual defendants actively participated in the aforementioned conduct but also observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene."  (Sec. Am. Compl. ¶ 89).  Defendants argue that the ACS defendants are not law enforcement agents and thus, did not have a duty to intervene on behalf of plaintiffs.  (Defs.' Mem. at 10).

---

[11]Plaintiffs had already raised a failure to intervene claim against the City and the NYPD defendants in the First Amended Complaint.

24

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence . . . . In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). A plaintiff must plausibly plead that "the failure to intercede was a proximate cause of the harm." Bah v. City of N.Y., No. 13 CV 6690, 2014 WL 1760063, at *7 (S.D.N.Y. May 1, 2014). However, liability may attach only when: "'(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.'" Chepilko v. City of N.Y., No. 06 CV 5491, 2012 WL 398700, at *8 (E.D.N.Y. Feb. 6, 2012) (citing Jean–Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)).

ACS, as an entity, has been held liable in the past for the constitutional violations of its employees under 42 U.S.C. § 1983. Nicholson v. Williams, 203 F. Supp. 2d 153 (E.D.N.Y. 2002) (holding that ACS's conduct substantially infringed on the fundamental liberty interests of mothers and children without advancing a compelling or substantial state interest). In Nicholson, the district court also held ACS liable for failing to act to protect the constitutional rights of mothers and children, granting the plaintiffs preliminary injunctive relief because ACS failed to aid abused parents in obtaining effective protection against their abusers and pursued neglect actions against the abused parents in Family Court for punitive purposes. In re Nicholson, No. 00 CV 2229, 2001 WL 1338834, at *2 (E.D.N.Y. Oct. 25, 2001). The court held that "these practices of ACS and other governmental bodies and personnel, as well as their failure to act

25

when action was required, violate the constitutional rights of both mothers and children." In re Nicholson, 2001 WL 1338834, at *2.  In addition, courts have held that plaintiffs have standing to bring suit against individual ACS officers under 42 U.S.C. § 1983 for depriving them of the custody of their children and for failing to protect the children from harm.  See Richards v. City of N.Y., 433 F. Supp. 2d 404, 423 (S.D.N.Y. 2006).

Here, plaintiffs allege that defendants failed to intervene to prevent a broad range of unlawful conduct.  (Sec. Am. Compl. ¶ 89).  It is unclear whether, legally, the ACS defendants had a duty or even a "realistic opportunity" to intervene and prevent some of the allegedly unconstitutional conduct, such as plaintiffs' arrest.  However, it is possible that the ACS defendants could be held liable for failing to intervene to prevent other constitutional conduct – specifically the removal of the children without sufficient procedural safeguards – because it was up to the ACS officers themselves to determine whether an objectively reasonable basis existed for the children's removal based on both Shaqueena Cook's history and the circumstances presented at the time of the officers' arrival at Darlene Cook's residence.  See P.A. v. City of N.Y., 44 F. Supp. 3d at 301 (holding that a child's emergency removal did not violate the mother's due process rights where ACS officers determined that a child should be taken to custody after speaking to plaintiff who appeared to be high on marijuana at the time of the call).

Since the ACS defendants had the legal authority to intervene to prevent conduct that violated plaintiff Shaqueena Cook's procedural due process rights, at least as to the extent that it was their duty to decide whether the removal of the children was justified by emergency circumstances, the Court grants plaintiffs' motion to amend the Complaint to add a failure to intervene claim against the ACS defendants.

5)  <u>Fabrication of Evidence and Fair Trial Claim</u>

Plaintiffs seek to bring a fabrication of evidence and denial of a fair trial claim, alleging that the NYPD officer defendants "falsely represented that plaintiffs committed acts which constitute [Obstruction of Government Administration] and/or resisting arrest" and that the ACS defendants falsely represented that there was lawful authority to remove the children on an emergency basis.  (Sec. Am. Compl. ¶ 75).  Defendants argue that plaintiffs' fabrication of evidence and denial of a fair trial claim is futile because plaintiffs' claim against the NYPD officers is based on statements made by police officers to prosecutors, which defendants claim constitute inadmissible hearsay.  (Defs.' Mem. at 4).  In addition, defendants argue that plaintiffs' claim against the ACS defendants is futile because the statements of the ACS defendants also constitute inadmissible hearsay and because these statements were made to the NYPD, not directly to a prosecutor.  (<u>Id.</u> at 5).

An individual suffers a constitutional deprivation of a right to a fair trial when "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors,[12] and (5) the plaintiff suffers a deprivation of liberty as a result." <u>Jovanovic v. City of N.Y.</u>, 486 F. App'x 149, 152 (2d Cir. 2012) (citing <u>Jocks v. Tavernier</u>, 316 F.3d 128, 138 (2d Cir. 2003)).

Defendants argue that the statements made by the police officers to prosecutors, allegedly

---

[12]Apart from the other reasons stated herein, defendants' argument that there can be no fabrication of evidence and denial of fair trial claim because the officers' statements to the prosecutors are inadmissible hearsay completely overlooks the fact that one of the elements of the cause of action is that the "investigating official . . . forwards that information to prosecutors."  <u>Jovanovic v. City of N.Y.</u>, 486 F. App'x at 152.  Under defendants' analysis, there would never be a cognizable claim because, according to defendants' theory, any statement forwarded to the prosecutor would be hearsay.

concerning the Obstruction of Governmental Administration charge, and the statements made by the ACS defendants to the NYPD, allegedly concerning the emergency basis for removal of the children, constitute inadmissible hearsay and therefore these statements could not influence a jury's decision because the rules of evidence would bar plaintiffs from proffering these statements as evidence.  However, the statement "likely to influence a jury" has been interpreted by courts in this circuit to only require "a showing . . . that the [false] information would likely influence the jury if it arrived at a jury." Garnett v. Undercover Officer C0039, No. 13 CV 7083, 2015 WL 1539044, at *8 (S.D.N.Y. Apr. 6, 2015).  Therefore, "[b]ecause materiality and causation are two distinct elements, and a denial of fair trial claim can accrue when fabricated information is forwarded to the prosecution (with no jury trial at all), the fact that allegedly fabricated evidence would be inadmissible at trial by itself is not a bar to the claim." Soomro v. City of N.Y., 174 F. Supp. 3d 806, 816 (S.D.N.Y. 2016); see Gomez v. City of N.Y., No. 14 CV 2621, 2016 WL 4411335, at *2 (E.D.N.Y. Aug. 18, 2016) (holding that because defendants "do not dispute the materiality of the fabricated eyewitness identification but only dispute whether the eyewitness identification claim would be "likely to influence a jury," plaintiff is entitled to summary judgment on the denial of a fair trial claim); Nnodimele v. Derienzo, No. 13 CV 3461, 2016 WL 337751, at *12 (E.D.N.Y. Jan. 27, 2016) (holding that "because materiality does not require that the fabricated evidence actually reach a jury, admissibility – which determines what evidence a jury will hear – is not a prerequisite to recovery for the injuries caused by the fabrication).

Therefore, the Court finds defendants' argument as to the inadmissibility of the allegedly fabricated evidence to be unpersuasive in light of the prevailing law in this circuit.

28

i. <u>NYPD Sergeant Liesengang and Officer Gomez</u>

Plaintiffs combine the denial of a fair trial claim with a fabrication of evidence claim, alleging that defendants fabricated evidence by falsely representing that plaintiffs committed acts which obstructed governmental administration and in doing so, deprived plaintiffs of the right to a fair trial.  (Sec. Am. Compl. ¶ 75).  Defendants argue that plaintiffs fail to plead factual allegations that would tie Sergeant Liesengang to the fair trial claim.  (Defs.' Mem. at 4).

In response, plaintiffs argue that since Sergeant Liesengang was the supervisor on the scene of the incident, approved the Complaint for the District Attorney's Office that allegedly fabricated a contrary account, and approved handwritten records about the arrest and complaint, he was directly involved in the forwarding of fabricated evidence.  (Pls.' Reply at 2-3).  Defendants also argue that the fair trial claim against Officer Gomez fails because even if Officer Gomez forwarded the allegedly fabricated evidence to the District Attorney's office, plaintiffs do not describe the nature of the false evidence in sufficient detail to determine whether it impacted their right to a fair trial.  (<u>Id.</u>)

A plaintiff's allegation that an officer made false statements that were later used as evidence against the plaintiff is sufficient to support a fair trial claim against that particular officer.  <u>Marom v. City of N.Y.</u>, No. 15 CV 2017, 2016 WL 5900217, at *2 (S.D.N.Y. July 29, 2016) (holding that plaintiffs' claim in the amended complaint that defendant officers lied about seeing plaintiffs at the scene of the crime stated "with adequate specificity what was "false" about the police reports and accusatory instruments at issue").  In addition, a supervisor can be held personally liable if he "participated directly in the alleged constitutional violation."  <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995); <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 155

(2d Cir. 2001) (holding that "ordering or helping others to do the unlawful acts, rather than doing them [oneself]," can constitute "direct participation").

Having reviewed the proposed amendments, the Court finds that plaintiffs have alleged with sufficient specificity what was "false" in the police reports made by the defendant officers regarding the incident.  In their Second Amended Complaint, plaintiffs allege that "NYPD Officer Defendants falsely represented that Plaintiffs committed acts which constituted OGA and/or resisting arrest presuming there was lawful authority to remove the children on an emergency basis."  (Sec. Am. Compl. ¶ 75).  In essence, plaintiffs are alleging that whatever facts were presented by the NYPD officers to justify plaintiffs' arrests were false in that they did not commit any acts constituting Obstruction of Governmental Administration.  Moreover, while defendants claim that Officer Gomez's alleged involvement in forwarding false allegations to the District Attorney's office is not sufficient in itself to state a fair trial claim, courts in this district have held that an allegation that an officer forwarded allegedly false evidence to a prosecutor is sufficient to claim that a plaintiff was deprived of a fair trial as a result of that conduct.  See Marom v. City of N.Y., 2016 WL 5900217, at *1 (citing Ricciuti v. New York City Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997) (holding that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial")).  Finally, plaintiff has alleged sufficient facts to support a plausible claim that Sergeant Liesengang approved the fabricated accounts and can be held liable for the actions of the other police officers based on his role as a supervisor.  See Colon v. Coughlin, 58 F.3d at 873.

ii.  <u>ACS Officers</u>

Defendants also argue that plaintiffs fail to allege any facts that would allow the Court to infer that the ACS officers denied plaintiffs of the right to a fair trial because to the extent the ACS officers reported any allegedly false representations, they reported not to a prosecutor directly, but to the NYPD officers.  In response, plaintiffs argue that defendants ignore the "collaborative way in which government enforces law through its many agency divisions," specifically that "agencies at times, as is true for ACS here, know that they have importuned the forwarding of fabricated evidence to prosecutors."  (Pls.' Reply at 3).

A defendant does not have to forward fabricated evidence directly to a prosecutor in order to be held liable for fabricating evidence; the officer can be held liable even if the allegedly fabricated evidence is forwarded to another police officer.  See <u>Maldonado v. City of N.Y.</u>, No. 11 CV. 3514, 2014 WL 787814, at *10 (S.D.N.Y. Feb. 26, 2014) (holding that plaintiff's fabricated evidence claim against one of the defendants, a detective, survived a summary judgment motion where the detective told a false narrative of events preceding plaintiff's arrest to another police officer, who forwarded that evidence to a prosecutor); <u>Buie v. City of N.Y.</u>, No. 12 CV 4390, 2015 WL 6620230, at *9 (E.D.N.Y. Oct. 30, 2015) (denying defendants' motion for summary judgment on a fair trial claim against two detectives where one detective signed a criminal complaint asserting false information given to him by the other detective).  Therefore, plaintiffs do not have to allege that the ACS defendants directly communicated the allegedly false information to a prosecutor in order to state a claim for relief on the grounds that defendants fabricated evidence against them.

Accordingly, the Court grants plaintiffs' motion to amend to add a fabrication of evidence

and fair trial claim against both the NYPD defendants Gomez and Liesengang, and the ACS

officers, Wright and Dawson.


   B.  Undue Delay and Prejudice

Finally, defendants argue that granting plaintiffs' motion to amend at this stage in the

litigation would cause undue delay to the proceedings and unduly prejudice defendants.  (Defs.'

Mem. at 10).


     i.  Undue Delay

Defendants argue that plaintiffs knew the identities of the ACS defendants as early as

when they drafted the first Amended Complaint on June 4, 2016.  (Id. at 11).  Defendants

contend that plaintiff's motion should accordingly be denied on the grounds that plaintiffs have

not explained the five-month delay in asserting their claims against the ACS defendants.  (Id.)

However, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not

provide a basis for a district court to deny the right to amend."  Arnold v. Research Found. for

State Univ. of N.Y., No. 15 CV 05971, 2016 WL 6126314, at *4 (E.D.N.Y. Oct. 20, 2016)

(quoting State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)).  In addition,

courts take into account the stage of litigation at which a party seeks to amend its pleadings to

determine whether there would be undue delay in granting the amendment.  Sorenson v.

Wolfson, No. 10 CV. 4596, 2014 WL 3293537, at *9 (S.D.N.Y. July 8, 2014) (finding undue

delay in plaintiff's motion to amend and denying leave to amend where, "nearly four years after

initiating this action and more than a year and a half after filing his Second Amended Complaint,

[plaintiff] requests leave to add claims and defendants").

Courts in this circuit have held that a defendant's claim that plaintiff had knowledge of the facts in the amendments at the time of pleading is alone insufficient to deny a motion to amend on the basis of undue delay.  See Affiliated FM Insurance Co. v. Liberty Mechanical Contractors, Inc., No. 12 CV 5160, 2013 WL 4526246, at *5 (S.D.N.Y. Aug. 27, 2013) (granting defendants' motion to amend their answer after nine months from the date of filing despite defendants' knowledge of relevant information at time of initial pleading because a party "need not prove that they uncovered new facts or law" to receive leave to amend); Henry v. Concord Limousine, Inc., No. 13 CV 0494, 2014 WL 297303, at *6 (E.D.N.Y. Jan. 24, 2014) (holding that "[a] defendant does not need to plead all known affirmative defenses at the time of the first answer.  As long as the proposed amendment does not prejudice the plaintiff, a defendant is not precluded from amending the answer to include affirmative defenses about which the defendant had knowledge") (internal citations omitted).

Finally, defendants' allegations that plaintiffs acted in bad faith in waiting to file the motion to amend are conclusory and are insufficient to prove bad faith absent other evidence of a dilatory motive.  (Def.'s Mem. at 11).  See Cat3, LLC v. Black Lineage, Inc., No. 14 CV 5511, 2015 WL 5559569, at *5 (S.D.N.Y. Sept. 21, 2015) (holding that defendants made no showing that plaintiffs acted in bad faith in bringing a motion to amend where "[i]n conclusory fashion, the defendants assert that the plaintiffs 'desire to keep Defendants tied up in [ ] costly litigation as long as possible' and describe the plaintiffs' actions as 'the very definition of bad faith'"); U.S. Bank Nat. Ass'n v. 2150 Joshua's Path, LLC, No. 13 CV 1598, 2014 WL 4543067, at *3 (E.D.N.Y. July 16, 2014), report and recommendation adopted, No. 13 CV 1598, 2014 WL

4542950 (E.D.N.Y. Sept. 10, 2014) (granting plaintiff's motion to amend where "[d]efendants'

contention that plaintiff has engaged in abusive, bad-faith litigation and discovery tactics

amounts to little more than a bald assertion that plaintiff has conducted a "fishing expedition."

This conclusory allegation is unsupported by any specific examples") (internal citations omitted).

      Here, plaintiffs' delay in seeking to amend the Complaint to add the ACS defendants

stems from the prolonged period of discovery required to obtain and review the ACS records.

Plaintiffs contend that they only received the first pages of the ACS records on June 7, 2016.

Immediately thereafter, at the June 8, 2016 status conference, they suggested that they would add

the ACS defendants but indicated that they wanted to wait for defendants to produce additional

ACS records and Family Court records to support their theory of liability. (Pls.' Reply at 1).

Following the review of the ACS records later that summer, plaintiffs decided they wished to add

claims against the ACS defendants. (Id. at 2). The events in this case indicate that plaintiffs did

not have actual notice of the extent of the involvement of the ACS defendants, and whether their

actions contributed to plaintiffs' alleged harm, until later in the discovery process. C.f.

Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.,148 F. Supp. 2d 321, 330-31 (S.D.N.Y. 2001)

(denying plaintiff's motion to amend to add another defendant where, "the defendants have

demonstrated that the plaintiffs have been on notice of facts sufficient to support the proposed

claims against Frankfurt Garbus for approximately 18 months"). Unlike the circumstances in

Briarpatch Ltd., where the court found that "[a]dding Frankfurt Garbus would be fundamentally

unfair to the existing defendants, who would suffer prejudice greater than that which plaintiffs

might suffer by having to refile against Frankfurt Garbus in state court," by contrast, here,

plaintiffs filed their second motion to amend the Complaint to add the ACS defendants and new

claims only after they had received and reviewed the production of ACS records from defendants, which, they argue, provide support for their theories of liability against the new defendants.

Thus, the Court finds that while there may have been some delay in filing the Second Amended Complaint, the majority of the delay following the filing of the initial complaint stems from reasons other than bad faith or a desire to delay the litigation further.  Plaintiffs were unable to amend the Complaint to add these defendants until several months after the Complaint was filed and discovery had begun because they wanted to first review the ACS records to determine if they had sufficient factual basis to bring these claims.

Accordingly, defendants' contention that plaintiffs caused undue delay in bringing this motion to amend are insufficient to warrant denial of the motion absent some indication that plaintiffs brought the motion in bad faith or that granting the motion will cause undue prejudice to defendants.

ii.  Undue Prejudice

Defendants also argue that granting plaintiff leave to amend the Complaint at this time would unduly prejudice defendants.  Defendants allege that, "defendants have already responded to Plaintiff's Discovery Demands and have already produced over 1,000 pages in paper discovery."  (Def.'s Mem. at 11).  In response, plaintiffs argue that the parties have not yet begun depositions and that there was still substantial outstanding document production to be completed, including further discovery of plaintiff Shaqueena Cook's Family Court records. (Pls.' Reply at 8).

In deciding whether undue prejudice exists to warrant denial of a motion to amend, courts

35

must evaluate whether the amendment would:  "'(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'"  Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (citing Monahan v. New York City Department of Corrections, 214 F.3d 275, 284 (2d Cir. 2000)).  The inquiry involves a balancing process that weighs the potential prejudice to the opposing party against the disadvantage the moving party would face if the motion to amend were denied.  Id. at 454.  In addition, the non-moving party bears the burden of demonstrating that "substantial prejudice would result if the proposed amendment were granted."  Id. (citing Oneida Indian Nation of N.Y. State v. County of Oneida, N.Y., 199 F.R.D. 61, 77 (N.D.N.Y. 2000)).

Although defendants argue that the necessity of additional discovery would cause undue prejudice, this alone is not sufficient grounds to deny the motion to amend.  Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d at 455 (holding that "although the amendment may warrant additional discovery, it should not significantly prolong the resolution of the action"); Speedfit LLC v. Woodway USA, Inc., No. 13 CV 1276, 2015 WL 6143697, at *4 (E.D.N.Y. Oct. 19, 2015) (citing U.S. ex rel. Mar. Admin. v. Continental Ill. Nat'l Bank & Trust Co. of Chi., 889 F.2d 1248, 1255 (2d Cir. 1989)) (holding that "[i]n any event, even if additional, limited discovery is required, 'the fact that the opposing party will have to undertake additional discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading'").  While plaintiffs seek to amend the Complaint for a second time approximately ten months after filing the original Complaint, no depositions have occurred, no motions for summary judgment or motions to dismiss have been filed and a trial date has not yet been set, events which would

indicate that the parties have progressed far beyond the stage of discovery.  See Lin v. Toyo Food, Inc., No. 12 CV 7392, 2016 WL 4502040, at *3 (S.D.N.Y. Aug. 26, 2016) (holding that defendants have not established they would be unduly prejudiced through plaintiffs' proposed amendments and finding that "[a]lthough Defendants complain that the proposed amendment would 'further extend the already-lengthy duration of this [case],' it bears mentioning that no motions for summary judgment have been filed, nor has a trial date been set") (internal citations omitted).

Here, other than delay and the need for discovery, which would have to occur even in the absence of the amendments, defendants have not cited any other basis for finding prejudice. Moreover, in this case, plaintiffs provide good cause for seeking to add the ACS defendants at this stage in the litigation.  Therefore, the Court finds that defendants would not be unduly prejudiced if plaintiffs' second motion to amend to add new defendants and claims were granted at this stage in the litigation.

CONCLUSION

In light of the foregoing, the Court grants plaintiffs' motion to amend to add ACS

employees Sasha Dawson and Cerissa Wright as defendants.  The Court also grants plaintiffs'

motion to amend to add the following claims:  1) the fabrication of evidence and fair trial claim

against the NYPD defendants Gomez and Liesengang and the ACS defendants Dawson and

Wright; 2) the false arrest, due process, and unlawful search claims against the ACS defendants;

3) the failure to intervene claim against the ACS defendants; and 4) the First Amendment

retaliation claim against the NYPD defendants and the ACS defendants.

The Clerk is directed to send copies of this Order to the parties either electronically

through the Electronic Case Filing (ECF) system or by mail.


**SO ORDERED.**

Dated: Brooklyn, New York
       March 20, 2017

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

38