UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

DARLENE COOK and SHAQUEENA COOK,

                              Plaintiffs,

               -against-

CITY OF NEW YORK, NYPD OFFICER
ARTURO GOMEZ, Tax No. 954876, NYPD
SERGEANT EDWARD LIESENGANG, Tax
No. 938843, ACS CHILD PROTECTIVE
SPECIALIST CERISSA WRIGHT, ACS CHILD
PROTECTIVE SPECIALIST SUPERVISOR
SASHA DAWSON, and JOHN/JANE DOES 1-
10,

                            Defendants.

------------------------------------------------------------------ x

**SECOND AMENDED COMPLAINT**

Jury Trial Demanded

15cv6559 (ILG) (CLP)

## NATURE OF THE ACTION

1.    This is an action to recover money damages arising out of the violation of Plaintiff Darlene Cook's and Plaintiff Shaqueena Cook's ("Plaintiffs") rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

3.    This Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

4.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c). The incident in question took place in this District in Kings County.

## JURY DEMAND

5.      Plaintiffs demand a trial by jury in this action pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

6.      At the time of the incident in question, which took place in Kings County, New York, Plaintiff Darlene Cook resided in Kings County in the State of New York.

7.      At the time of the incident in question, Plaintiff Shaqueena Cook resided in Bronx County, New York, but Shaqueena Cook's arrest, which among other things is the subject of the incident in question, took place in Kings County, New York.

8.      Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9.      Defendant City of New York maintains the New York City Police Department (hereinafter "NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the City of New York.

2

10.     Defendant NYPD Officer Arturo Gomez, NYPD Officer Edward Liesengang, and NYPD John/Jane Doe Officers 1-10 (collectively the "NYPD Officer Defendants"), at all times relevant herein, were duly sworn officers, employees and agents of the NYPD and were acting under the supervision of said department and according to their official duties.  NYPD Officer Defendants are sued in their individual capacities.

11.     Defendant City of New York maintains the Administration for Chilrden's Services ("ACS"), a duly authorized public authority, authorized to protect and promote the well-being of New York City's families and children by providing child welfare, juvenile justice, and early care and education services as per the applicable sections of the aforementioned municipal corporation, the City of New York.

12.     Defendant ACS Child Protective Specialist ("CPS") Cerissa Wright and Defendant Child Protective Specialist Supervisor ("CPSS") Sasha Dawson (collectively "ACS Officer Defendants"), at all times relevant herein, were duly sworn officers, employees and agents of the ACS and were acting under the supervision of said department according to their duties.  ACS Officer Defendants are sued in their individual capacities.

13.     That at all times hereinafter mentioned Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

14.     Each and all of the acts of the Defendants were done by said Defendants while acting within the scope of their employment by Defendant City of New York.

## STATEMENT OF FACTS

15.     Shaqueena Cook is the mother of C.C., who at the time of this incident was approximately one-and-a-half years old and in Shaqueena Cook's custody.

16.     Defendant CPS Wright was Shaqueena Cook's family caseworker at ACS at the times relevant to this incident.

17.     Defendant CPSS Dawson was Defendant CPS Wright's supervisor at the times relevant to this incident.

18.     In or around mid-February 2014, Shaqueena Cook spoke to Defendant CPS Wright for the last time prior to the events leading up to this incident.

19.     At the time of that last conversation, Defendant CPS Wright knew that Shaqueena Cook was approximately eight months pregnant with M.C.  Defendant CPSS Dawson also knew this.

20.     Defendant CPS Wright and Shaqueena Cook had not discussed C.C.

being removed from Shaqueena Cook's care between 2012 and leading up to M.C.'s birth.  Defendant CPS Wright and Shaqueena Cook had not discussed C.C. and M.C. being removed from Shaqueena Cook's care after M.C.'s birth.

21.     On information and belief, Defendant CPS Wright and Defendant CPSS Dawson never tried to file nor successfully filed a neglect petition relating to C.C. between her birth and M.C.'s birth.

22.     On or about March 8, 2014, Shaqueena Cook gave birth to M.C. at Mount Sinai Hospital.

23.     Defendant CPS Wright did not speak to Shaqueena Cook while Shaqueena Cook was in hospital, despite receiving notification that Shaqueena Cook gave birth to M.C. and was in hospital.

24.     Instead, CPS Donna Farray, who is not a Defendant in this action, responded to an ACS "Safety Alert 14," which is an agency review requirement whereby agency staff investigates an ACS-supervised family at the moment that that family welcomes a newborn.  The point of the Safety Alert 14 is to assure the newborn's safety.

25.     CPS Farray noted in related records that Shaqueena Cook's case was not designated an IRT requiring an "Instant Response Team," which was an early signal that there was no immediate threat to M.C.'s well-being (or C.C.'s, for that matter).

26.     CPS Farray observed that a neglect allegation would be "unsubstantiated

as it could not be shown that the physical, mental, emotional condition [of M.C.] was placed at risk of impairment by [Shaqueena's] actions." CPS Farray entered her conclusions in Shaqueena Cook's ACS file. CPS Farray's notes indicated that Shaqueena Cook received morphine during childbirth (meaning that any presence of opiates in her or M.C.'s system was attributable to that) and that Shaqueena Cook's break from certain medications during pregnancy did not affect her health (and that in any event Shaqueena Cook seemed well).

27. On March 10, 2014, Shaqueena Cook and M.C. were released from hospital in the morning and went to Shaqueena Cook's sister family home.

28. Also on March 10, 2014, Shaqueena Cook's grandmother died. Her name was Cleopatra Cook.

29. Later in the day on March 10, 2014, Defendant CPSS Dawson wrote a progress note in the Shaqueena Cook file stating that C.C. and M.C. did not seem to be in danger of any harm by being with their mother.

30. Finally, it was almost midnight on March 10, 2014, when CPS Albert-Ann Benjamin made an unannounced visit to Shaqueena Cook to further investigate the case. CPS Benjamin, who is not a Defendant in this case, remarked in ACS records that she observed M.C. as being in good condition; that M.C. and Shaqueena Cook interacted well together; and that CPS Benjamin had an opportunity to speak with Shaqueena Cook's sister as well during the visit.

31.     Plaintiff Darlene Cook is Plaintiff Shaqueena Cook's maternal aunt.

32.     The recently-deceased Cleopatra Cook was Darlene Cook's mother.

33.     On March 11, 2014, Plaintiff Darlene Cook called other members of the Cook family and invited them to her home at 9720 Kings Highway ("9720 Kings") so that they could talk about funeral plans for Cleopatra Cook as a family.

34.     Plaintiff Shaqueena Cook was among the Cook family members who went to 9720 Kings to discuss the Cleopatra Cook memorial plans.   Plaintiff Shaqueena Cook brought C.C. and M.C. with her.

35.     At some point that day, Defendant CPS Wright called Plaintiff Shaqueena Cook and asked her if she could bring diapers to her for M.C.   Plaintiff Shaqueena Cook agreed, but told Defendant CPS Wright that she would be at 9720 Kings for part of the day.   Defendant CPS Wright responded that she would visit Plaintiff Shaqueena Cook, C.C. and M.C. there.

36.     At approximately 8:00 p.m. on March 11, 2014, Plaintiff Darlene Cook and Plaintiff Shaqueena Cook were on the sidewalk outside 9720 Kings with a young relative who was riding her scooter.   Other members of the Cook family were inside of 9720 Kings with C.C. and M.C.

37.     Defendant CPS Wright, Defendant CPSS Dawson, Defendant NYPD Officer Gomez, Defendant NYPD Sergeant Liesengang, and at least ten Doe Defendants arrived at 9720 Kings.

38.     Defendants split into groups.   One group approached Plaintiff Shaqueena Cook ("Defendant Group One").   ACS Defendants were among them. Defendant Group One informed Plaintiff Shaqueena Cook that they were there to remove C.C. and M.C.   Another group approached Plaintiff Darlene Cook ("Defendant Group Two").   A third group went directly to the door of 9720 Kings and knocked ("Defendant Group Three").

39.     9720 Kings was directly accessible from the sidewalk through two doors. The first door was on the sidewalk and led to a small square vestibule ("the Sidewalk Door").   Once inside the vestibule, the second door led to the home's interior ("the Second Door").   The Sidewalk Door was wide open when Defendants arrived, and so Defendant Group Three entered and occupied the vestibule immediately and their knock was directly upon the Second Door from the start.

40.     Plaintiffs asked if Defendants had a warrant or court order.   Defendants did not.   NYPD Officer Defendants stated that ACS Officer Defendants had authority to remove the children, and ACS Officer Defendants stated that this was true.   On information and belief, ACS Officer Defendants made this false representation to NYPD Officer Defendants before, during and after the incident.

41.     NYPD Officer Defendants handcuffed and arrested Plaintiffs without any reasonable belief that they had committed a criminal offense, even assuming ACS Defendants had reasonably believed and appropriately represented that there were

emergency removal circumstances, then placed them within a police vehicle for transport to the precinct.  On information and belief, Defendant Officer Gomez and Defendant Sergeant Leisengang were among the Defendants who arrested Plaintiffs without cause.  Other Defendants assisted and failed to intervene, knowing that there was no cause for Plaintiffs' arrest.  On information and belief, Defendants arrested Plaintiffs in order to halt Plaintiffs' questioning about a warrant or court order for the search and seizure.

42.     Meanwhile, the occupants of 9720 Kings had opened the door to Defendant Group Three and now ACS Defendants were in the process of removing C.C. and M.C.

43.     Defendant Officer Gomez falsely reported to District Attorney's Office employees that Darlene Cook committed acts during the incident constituting Obstruction of Governmental Administration ("OGA").  This was not true.

44.     Defendant Officer Gomez false reported to D.A.'s Office employees that Shaqueena Cook committed acts during the incident constituting OGA and then, while she was being arrested for OGA, constituting resisting arrest.  This was not true.

45.     In reliance upon Defendants' false statements, the D.A.'s Office charged Darlene Cook with OGA and Shaqueena Cook with OGA and resisting arrest.

46.     Darlene Cook and Shaqueena Cook were incarcerated for roughly one day before they were released.

47.     Months later, after various court appearances, a state court judge dismissed the charges against Plaintiffs.

48.     Plaintiffs suffered damages as a result of Defendants' violations of their rights.  Defendants unconstitutionally deprived Plaintiffs of their liberty and caused them emotional trauma.

49.     All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its NYPD employees, and due to a custom, policy and/or practice of: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

50.     In addition, all of the above occurred as a direct result of the City's unconstitutional customs or practices include the inadequate screening, hiring, retaining, training and supervising of its ACS employees, which manifests in an unreasonably high number of unjustified removals founded upon false representations about familial neglect, and an unreasonably high percentage of those being on the basis of so-called "emergency grounds" which are later found not to have been

emergencies by the relevant authorities.   In particular, Defendant City was, on information and belief, on notice that ACS Defendants in this case had previously unreasonably alleged neglect and/or emergency circumstances justifying removal without preliminary judicial review, all of which involved unreasonable fabrication or omission of materials facts, and Defendant City failed to either establish or follow protocols designed to direct ACS Defendants about applicable legal standards in these respects.   As a consequence of Defendant City's failure to act despite this knowledge, Defendant City directly caused the violation of Plaintiffs' rights as herein described insofar as the violations were also caused by Defendants' (uncorrected) tendency to fabricate or omit material statements.

51.    The aforesaid incident is not an isolated incident.   The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts.   As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims and complaints filed with the NYPD's Internal Affairs Bureau and the CCRB and equivalent institutions corresponding to ACS) that many NYPD and ACS Officers, including the Defendants, falsely arrest individual persons in order to meet productivity goals and arrest quotas in the case of the NYPD and/or pursue unjustifiable neglect petitions,

some of them as requiring emergency removals in the case of ACS, all with the individual goal of professional advancement, overtime compensation and/or other objectives outside the ends of justice.

52.     Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights.  Despite such notice, Defendant City of New York has failed to take corrective action.  This failure caused Individual Defendants in this case to violate Plaintiffs' constitutional rights.

53.     Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

54.     All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

55.     All of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

56.     The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as NYPD Officers and ACS Officers, with the entire actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYPD and ACS, all under the supervision of ranking officers of said department.

57.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

58.     As a result of the foregoing, Plaintiffs are entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
## 42 U.S.C. § 1983

59.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

60.     Defendants, by their conduct toward Plaintiffs alleged herein, violated Plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

61.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

62.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SECOND CLAIM
## FALSE ARREST
## (Plaintiffs against NYPD Defendants and ACS Defendants)

63.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

64.     Defendants violated the Fourth and Fourteenth Amendments.  In the case of NYPD Officer Defendants, they confined Plaintiffs without justification because Plaintiffs' acts did not satisfy the elements of OGA or, in the case of Shaqueena Cook, resisting arrest.  This is true even assuming, _arguendo_, that the ACS Defendants credibly and reliably represented to NYPD Officer Defendants that emergency circumstances existed to remove C.C. and M.C.

65.     However, Plaintiffs plead in the alternative that in the event that a factfinder concludes that NYPD Officer Defendants reasonably construed Plaintiffs' acts as violations of OGA or resisting arrest under circumstances where there were legitimate emergency removal conditions, ACS Defendants' false statements and omissions to the NYPD about the existence of those emergency removal conditions renders ACS Defendants liable for false arrest on the theory that this unlawfully importuned the NYPD Defendants to confine the Plaintiffs without justification. Both OGA and resisting arrest are offenses which require legitimate government action in the first instance for an individual to interfere or resist.

66.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

67.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

### THIRD CLAIM
### FIRST AMENDMENT RETALIATION
### (Plaintiffs Against NYPD Defendants And ACS Defendants)

68.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

69.     Plaintiffs allege that they had an interest protected by the First Amendment in requesting that Defendants—NYPD Officers and ACS Officers alike—show them that the removal of C.C. and M.C. was the subject of an order, or that the search of Darlene Cook's home was pursuant to a warrant, or that either the removal or the search was justified by some constitutional exception to the same, rather than simply surrendering children or privacy without requesting proof of process.

70.     Defendant NYPD Officers were substantially motivated to arrest Plaintiffs due to Plaintiffs' exercise of their right to assert their constitutional rights before surrendering them.  Defendant ACS Officers importuned Defendant NYPD Officers to take this action in order to chill Plaintiffs' exercise of this right as well, as Defendant ACS Officers' lawful execution of their responsibilities were implicated in Plaintiffs' assertions of their rights, a fact that Defendant ACS Officers did not wish to consider or have considered.  As a consequence of Defendants' actions, Plaintiffs' exercise of their rights was chilled.

71.     Accordingly, Individual Defendants violated the First and Fourteenth Amendments of the United States Constitution.

72.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

73.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

### FOURTH CLAIM
### FABRICATION OF EVDIENCE/FAIR TRIAL CLAIM
### (Plaintiffs againt NYPD Defendants and ACS Defendants)

74.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

75.     Defendants fabricated evidence likely to influence a jury's decision, forwarded that information to prosecutors, and Plaintiffs suffered a deprivation of liberty as a result.  This is true of NYPD Officer Defendants and ACS Defendants alike.  First, and as stated above, NYPD Officer Defendants falsely represented that Plaintiffs committed acts which constituted OGA and/or resisting arrest presuming there was lawful authority to remove the children on an emergency basis, and ACS Officer Defendants falsely represented that there was lawful authority to remove the children on an emergency basis.  Each Defendants' fabrication of evidence and failure to intervene to correct the perpetuation of that fabrication of evidence worked, in

whole or in part, to deprive Plaintiffs' of their right to a fair trial as guaranteed by the constitution.

76.     Defendants' actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

77.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs sustained the damages herein alleged.

## FIFTH CLAIM
## DUE PROCESS
## (Shaqueena Cook against ACS Defendants)

78.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

79.     ACS Defendants violated Plaintiff Shaqueena Cook's right to family integrity, i.e., the right of a family to stay together without the interference of the power of the state.

80.     In so doing, ACS Defendants did not have any cause that excused their use of constitutional procedure to interfere.

81.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

82.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SIXTH CLAIM
## UNLAWFUL SEARCH
## (Darlene Cook against ACS Defendants)

83.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

84.     Individual Defendants actively participated in the aforementioned unlawful conduct.

85.     Plaintiff Darlene Cook had a reasonable expectation of privacy in her home at 9720 Kings, which privacy ACS Defendants unreasonably importuned NYPD Officer Defendants to violate by falsely stating to them that they had an emergency justification for entering the premises without Plaintiff Darlene Cook's consent to seize C.C. and M.C.

86.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

87.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SEVENTH CLAIM
## FAILURE TO INTERVENE
## (Plaintiffs against NYPD Defendants and ACS Defendants)

88.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

89.     Individual Defendants actively participated in the aforementioned unlawful conduct but also observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

90.     Accordingly, Individual Defendants who failed to intervene violated the First, Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

91.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

92.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## EIGHTH CLAIM
## MONELL CLAIM

93.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

94.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

95.     The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York, the NYPD and ACS included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Plaintiffs' rights as described herein.  As a result of the failure of the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

96.     The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York, the NYPD and ACS included, but were not limited to: arresting innocent persons in the case of the NYPD and causing unnecessary neglect petitions in the case of ACS in order to meet quotas or for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an

individual effort and also in a conspiracy to justify or cover an abuse of authority after having unreasonably committed the same.

97.   The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York, the NYPD and ACS constituted deliberate indifference to Plaintiffs' safety, well-being and constitutional rights.

98.   The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York, the NYPD and ACS were the direct and proximate cause of the constitutional violations suffered by Plaintiffs as described herein.

**PRAYER FOR RELIEF WHEREFORE**, Plaintiffs respectfully request the following relief:

A. An order entering judgment for Plaintiffs against Defendants on each of their claims for relief;

B. Awards to Plaintiffs for compensatory damages against all Defendants, jointly and severally, for their violation of the First, Fourth, Fifth, Sixth and Fourteenth Amendment rights of Plaintiffs, the amount to be determined at jury trial, which Plaintiffs respectfully demands pursuant to FRCP 38;

C. Awards to Plaintiffs of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to the constitutional

rights and welfare of Plaintiffs, the amount to be determined at jury trial, which Plaintiffs respectfully demand pursuant to FRCP 38;

D. Awards to Plaintiffs of the costs of this action, including reasonable attorneys' fees;

E. Such further relief as this Court deems just and proper.

DATED:      April 10, 2017
            New York, New York

                            /s
            _____
            Ryan Lozar
            305 Broadway, 10th Floor
            New York, New York 10007
            (310) 867-1562
            ryanlozar@gmail.com

            *Attorney for Plaintiffs*